## CHARLES A. KOENIG et ux. v. UNION DEPOT RAILWAY COMPANY, Appellant.

### Division Two, March 6, 1906.

1. **INSANE PERSON: Not in Ward: Power to Sue: Bar.** A suit for damages by parents for the killing of their minor child should not be stopped upon a suggestion and showing to the court that one of them since the suit was brought has become insane and is confined in the county poorhouse, when such parent has not been legally adjudged to be insane. Such insane person may be represented by attorney in the trial of the cause, and especially where the attorney was employed before the party became insane, and a judgment for him is at most only voidable, and the court can after judgment see that the money recovered thereunder is paid over to a lawfully appointed guardian, and otherwise protect defendant from a further prosecution for the same cause of action.

2. **NEGLIGENCE: Street Car: Little Child: No Bell: Not Looking: Second Trial: Uncertain and Indefinite Testimony.** Defendant's motorman did not become aware of the presence on the crossing of plaintiff's six-year-old little girl until about the time she was run over, but was looking off toward another person. He made no effort to stop the car or slacken its rapid speed; he did not drop the fender, used no brake, and did not sound the gong or ring the bell, and gave no other signal, and the car ran 125 feet after hitting her. *Held*, that the weight of the testimony was for the jury, and two juries having found for the plaintiffs, this court will not hold that this testimony on behalf of plaintiffs was so indefinite and uncertain and that of defendant so clear and overwhelming to the contrary that the verdict cannot stand, however contradictory defendant's testimony may be of that of plaintiffs.

3. ———: **Inevitable Accident: Stopping Car.** Where there is substantial evidence that the motorman was not looking and that the car could have been stopped in time to have avoided hitting a six-year-old child running towards the track had the motorman been looking, it cannot be said that the killing was an unavoidable accident.

4. **NUMEROUS INSTRUCTIONS.** Where the instructions given, when taken together, fully cover every proposition raised by the respective parties, it was not error to refuse others asked. This court has often condemned the practice of giving numerous instructions.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

AFFIRMED.

*Boyle & Priest* and *Kiskaddon & Matthews* for appellant.

(1) By statute, where a disability is suggested by the adverse party, it is the duty of the court to continue the case until a representative can be brought in. R. S. 1899, secs. 756, 757. (2) It is the duty of a guardian of an insane person to prosecute and defend all actions. R. S. 1899, sec. 3667; Hayes v. Miller, 81 Mo. 424; Reed v. Wilson, 13 Mo. 30. (3) Actions must be brought and prosecuted by the guardian or next friend of a lunatic. Whetstone v. Whetstone, 75 Ala. 495; Dorsheim v. Roosback, 3 C. E. Green (N. J.) 438; Hayes v. Miller, 81 Mo. 424; Railroad v. Manger, 78 Ill. 300; Light v. Light, 25 Beav. 248; Reece v. Wilson, 13 Mo. 29; Nelson v. Duncomb, 9 Beav. 211. (4) Where judgment is rendered against anyone who is not at the time *sui juris,* if not void, it is irregular, and erroneous. Therefore, defendant has a right to object to proceedings in a case, when he learns that a plaintiff has become insane. Such plaintiff is incapable of appearing by attorney, cannot make a valid contract, or do any other act requiring the exercise of a sane volition. If the judgment should be against him, he would have a right to repudiate it, or a guardian, if afterwards appointed, could do it in his name and for him. Higgins v. Peltzer, 49 Mo. 157; Latshaw v. McNees, 50 Mo. 381; Powell v. Gott, 13 Mo. 459; Townsend v. Cox, 45 Mo. 401; Gamble v. Dougherty, 71 Mo. 602; Harkness v. Dysart, 36 Mo. 47; Branstetter v. Rives, 34 Mo. 318; Gauss v. Hussmann, 22 Mo. App. 115. (5) Insanity is a fact like death, marriage, or infancy. It is not necessary that there should have

been an administrator or executor appointed at the time of the suggestion of the death of a party, nor, in like cases, is it necessary that there should have been a guardian appointed for either an infant or insane person. The fact of death, infancy, marriage or insanity being suggested, unless the suggestion is disputed, it would be the duty of the court to issue *scire facias* to bring in the representative, if there was one, or continue the case, if there was none. If the suggestion should be disputed, then the court, it is conceived, might take evidence of the fact. But, in the case at bar, the fact of the insanity of one plaintiff was brought out by a person assuming to act as such insane person's attorney, and this was the first information that defendant or its counsel had of the fact. A suggestion was then made, and the court was then requested to act on such suggestion. The defendant offered to prove that the plaintiff was hopelessly and incurably insane—had paresis or softening of the brain—but the court overruled the offer, and defendant excepted. (6) The death or insanity of a client revokes the authority of the attorney to appear for him. Hunt v. Rousmanier, 8 Wheat. (U. S.) 174; Bunce v. Gallagher, 5 Blatch. (U. S.) 489; Berry v. Skinner, 30 Md. 567; Matthieser v. McMahon, 38 N. J. L. 537; Hill v. Day, 34 N. J. Eq. 150; Blake v. Garwood, 42 N. J. Eq. 276; Wallace v. Manhattan, 2 Hall (N. Y.) 495; Prior v. Kiso, 96 Mo. 314. (7) The plaintiff being insane, no proceeding could bind him unless he or his guardian elected that it should. Suppose the verdict had been against him—he, or his guardian, would have the right to say that the action never abated, and at any time come into court and, by proceeding in the nature of a writ of error *coram nobis*, have the judgment set aside, and the case tried again. Toney ex parte, 11 Mo. 663; Lashaw v. McNees, 50 Mo. 384; Powell v. Gott, 13 Mo. 460; Walker v. Deaver, 79 Mo. 674; Gray ex parte, 77 Mo. 160; Craig v. Smith, 65 Mo. 536. (8) Instruction 14 asked by defendant, and re-

fused by the court, ought to have been given. In that instruction defendant left it to the jury to find if it were a fact that defendant's motorman kept watch and sounded his gong. In addition to that it was left to the jury to find under the facts as they were disclosed, whether deceased was in danger for such time as to become apparent, so that the motorman by ordinary care might have avoided the accident.

*Lee Meriwether* for respondents.

(1) The greater part of appellant's brief is devoted to an earnest, if not unselfish, appeal to this honorable court to protect the rights of one of the respondents, whom appellant alleges to be insane. In what manner is he to be protected? Why, by depriving him of a judgment for $5,000! No matter that respondent Charles Koenig employed counsel in the outset, no matter that counsel obtained for his client all that he asked, and all that was due him; if, between the time of his retaining counsel and the rendering of full judgment in his favor, respondent became insane, then, in justice to said respondent, his judgment must be annulled so as to afford opportunity for his suit to be brought by an attorney appointed for him, instead of by the attorney selected by respondent himself. Where a litigant becomes insane a court may properly interfere to safe-guard the moneys awarded him; a novel theory, however, to "safe-guard" an unfortunate litigant by taking away what a court and jury have awarded him for the sole purpose of giving him—what? Why, the blessed right of bringing his suit all over again, by another lawyer. But, assuming that appellant's keen regard for the rights of an insane respondent should be satisfied in the manner indicated (by depriving such respondent of the judgment awarded him)—what ground is there for assuming the insanity of Charles A. Koenig? Can a mere "suggestion" suffice to stop a suit or rob a liti-

gant of the fruits of a legal victory? Like innocence, sanity is assumed until the contrary be proved. And the law provides the method for establishing a citizen's insanity. No mere "suggestion," nay, not even the positive opinion of doctors and surgeons is permitted to constitute prima facie evidence of insanity. Appellant cites section 756, Revised Statutes 1899, as showing that it is the duty of a court to continue a case where disability is suggested; the language of the statute is, that the court may (not shall) continue the case. Appellant urges that the insanity of a client revokes the authority of the attorney to appear for him. The client, through guardian properly appointed, may dispute the attorney's right further to appear for him, but there is nothing in the cases cited by appellant to show that the adverse party may dispute attorney's right. Prior v. Kiso, 96 Mo. 303. In the case at bar there is a judgment to overthrow, and it is not the client who disputes the attorney's authority. (2) Concerning appellant's criticism of the instructions, it need only be said that the instructions were framed in accordance with the opinion of this court handed down in the October term of 1902 (173 Mo. 698).

GANTT, J.—This is the second appeal of this cause. The first is reported in 173 Mo. 698. The evidence is fully stated in the opinion of Judge Burgess on the former appeal, and it is unnecessary to reproduce it in full. The plaintiffs are respectively father and mother of Amelia Koenig, their infant daughter, who was struck and killed on the 8th day of May, 1899, by one of defendant's street railway cars at the intersection of Arsenal street and Compton avenue, in the city of St. Louis. Amelia was about six years old at the time she was killed. The defendant is a corporation organized under the laws of this State, and operating a street railway with double tracks on Arsenal street. Its cars are propelled by electricity. On the 8th day of

May, 1899, between two and three o'clock in the afternoon of that day, one of the defendant's cars proceeding westward on Arsenal street, struck Amelia, at or near the crossing of the west line of Compton avenue, with such force that she died an hour or two thereafter. The testimony tended to show that from Michigan avenue, the first street east of Compton, down to Compton there was a steep descending grade in defendant's railway track. The negligence alleged was that the defendant recklessly and negligently ran its car with great speed in excess of the ordinance of the city of St. Louis regulating the speed and operation of street railway cars, and in violation of said ordinance and with such rapidity that the motorman lost control thereof so that he could not stop the same at the crossing on Compton avenue; that while running down said grade to Compton avenue, the motorman neglected and failed to sound the gong or bell on said car, or to give any other warning of its approach, and failed and neglected to keep a proper lookout for persons crossing said Arsenal street at Compton avenue, and neglected to lower the fender and apply the brake until after said Amelia had been struck. The answer was a general denial. A change of venue was granted to the St. Louis County Circuit Court. After the reversal of the judgment on the first trial by this court, the cause was retried at the May term, 1903, of said court, and resulted in a verdict for the plaintiff in the sum of five thousand dollars. Motions for new trial and in arrest were filed in due time and overruled, and an appeal granted to this court. Various errors are assigned on this appeal which will be considered in the order of their presentation in the brief of counsel for the defendant.

I. In the course of the examination of Mrs. Lizzie Koenig, the mother of Amelia Koenig, she was asked: "Where is your husband, Charles Koenig?" and she

answered, "He is out of his mind and is at the poor-house. On the 29th of August he will have been there two years." On cross-examination she was asked if any jury was ever impaneled to find out whether he was insane, and she answered that there had not been. At this point in the trial, counsel for the defendant objected to proceeding further with the case on the ground that the parties would not be bound by any judgment rendered; that plaintiff being insane, plaintiff's counsel had no authority to appear for him; that he ought to have a guardian to represent him. The court overruled this objection, and the defendant excepted. Afterwards on the same day, the defendant's counsel made the following suggestion: "I desire to state to the court at this stage of the case—I desire to have the record show—that after the jury was impaneled and sworn, and while the first witness was on the stand testifying for the plaintiff, for the first time it came to the knowledge of the defendant and its agent that the plaintiff, Charles A. Koenig, was insane, and the defendant now makes the suggestion to the court that the plaintiff Charles A. Koenig is insane and suggests to the court such insanity, and asks that the trial of the case be suspended until such time as a guardian of the insane person can be appointed to represent him in court, and we object to proceeding any further with the trial of the case." The court refused to suspend the trial of the case and ordered the trial to proceed, whereupon the defendant excepted. After the plaintiffs had introduced their evidence in chief, the defendant put Dr. Erbon on the stand and offered to prove by him that Charles A. Koenig, one of the plaintiffs, was hopelessly and incurably insane, and had been for two years. To this evidence the defendant objected as not pertinent to any issue in the case and the circuit court sustained the objection and defendant excepted. In its motion for new trial, the defendant assigned this action of the court as ground for a new trial, and it was overruled.

It is conceded that no inquest into the mental condition of Charles A. Koenig had ever been held and that he has not been adjudged insane by any court of competent jurisdiction. The question now is, did the circuit court err in proceeding with the trial after the suggestion of insanity was made as above stated? At common law it is stated by Lord COKE in Beverly's case, 4 Coke 125 a.: "An idiot in an action brought against him shall appear in proper person, and he who pleads best for him shall be admitted as appears in 33 H. 6. 18 b. Otherwise it is of him who becomes *non compos mentis,* for he shall appear by guardian if he is within age, and by attorney if he is of full age." In Rock v. Slade, 7 Dowling's Practice Cases, 22, an action was brought in the name of the plaintiff who was a lunatic, by his wife, to recover money. The defendant's attorney asked for a rule on the plaintiff's attorney to show by what authority the action was brought. COLERIDGE, judge on the circuit, was of opinion that under the circumstances the plaintiff's wife had an implied authority to bring the action, and he ordered that the amount of the debt should be paid into court, and proceedings stayed until further order. On motion for a rule to show cause why the money paid into court should not be paid to the wife of the plaintiff, it was contended by the attorney for the defendant that the appointment of an attorney presumes mental power upon the part of the individual making it, which a lunatic is incapable of exercising, and that if the rule should be absolute, the defendant would have no protection against future action at the suit of the plaintiff. Lord ABINGER said: "It is everyday practice to sue in the name of a lunatic, and I never heard any question as to the propriety of such action where no committee was appointed. If we were to compel a party to go into equity for the appointment of a committee, there are many instances in which a lunatic might starve before he could recover his money. If the defendant wants the protection of this court, he should

let the plaintiff obtain judgment.'' Chitty in his Pleading, vol. 1, 577, adopts the statement of Lord COKE above noted. In Allen v. Ransom, 44 Mo. 263, in an action of ejectment, Judge BLISS, in the course of the opinion, said: ''The claim of the plaintiff seems to have been sharply contested, and various questions were sprung upon him. First, as the case was called for trial, the defendant filed a paper suggesting to the court 'that the plaintiff was insane,' to which suggestion the court paid but little attention, and directed the trial to proceed, and defendant excepted. I do not see precisely the object of the suggestion, nor does the record intimate it. Even if the suggestion was true, which does not appear, the suit must proceed in the name of the plaintiff, and he might all the more require for his support the possession of his property,'' citing 2 Saunders Pl. and Ev., 318; Reed v. Wilson, 13 Mo. 28. In Reed v. Wilson, it was held that a suit on behalf of a lunatic must be instituted in the name of the lunatic and not in the name of the guardian, and that was an action of replevin for slaves and other personal property. Since the admission of Missouri into the Union as a State, there has always been a statute making it the duty of every guardian of an insane person to prosecute and defend all actions instituted in behalf of or against his ward, and where there has been an inquest and a party adjudged insane, and a guardian has been appointed and qualified as such, there can be no doubt it is his duty to prosecute and defend all actions instituted in behalf of or against his ward. But it is obvious that this statute, now section 3667, Revised Statutes 1899, makes no provision for a case like the one before us, where no inquest has been held and there has been no adjudication of insanity. Inasmuch as at common law an insane person could appeal by attorney and as there had been no inquest found in the case of the plaintiff Charles A. Koenig, we think the circuit court properly declined to stop the trial upon the suggestion of the defendant.

Such was the ruling in Allen v. Ransom, supra, and we have no doubt whatever that the judgment in the case will be ample protection to the defendant from another action for the same cause. In this State a deed of conveyance of real estate by an insane person before inquest is not void but voidable only. [McAnaw v. Tiffin, 143 Mo. 678; Jamison v. Culligan, 151 Mo. 416; McKenzie v. Donnell, 151 Mo. 454; Blount v. Spratt, 113 Mo. 55.] If the solemn conveyances and contracts of an insane person, not in ward, are not void but voidable only, upon equitable terms, we see no reason why a contract of employment of an attorney to bring an action should be held void. Clearly if not void, it does not lie in the mouth of the defendant to make any objection to the retainer of counsel by the plaintiff Charles A. Koenig, especially as he employed the counsel who appeared for him when he was sane and when he obtained the first judgment in this cause in the circuit court. The circuit court, as indicated by Lord ABINGER, by proper orders can protect the defendant in seeing that whatever fund is recovered is paid over to a lawfully appointed and qualified guardian.

II. It is next insisted that the plaintiffs' verdict rests upon such indefinite and such uncertain testimony, and the evidence on behalf of the defendant is so clear and overwhelming to the contrary that the circuit court should have taken the case from the jury at the close of the whole case. When this case was before this court before on practically the same testimony, it was said: "It is clear from the evidence that defendant's motorman did not become aware of the danger of the child until the time of, or after she had been run over by the cars." [Koenig v. Railroad, 173 Mo. l. c. 724.] The testimony on behalf of plaintiffs was to the effect that at the time defendant's car struck the little girl, the motorman in charge was looking off toward the witness Dashman, and did not see her in the street. The testi-

mony further shows that up to the time he struck the child, he made no effort whatever to stop the car or slacken its speed; he did not drop the fender, he used no brake prior to hitting the child, but struck her while going at a good speed; no gong or other signal or warning was given by the defendant's servants to indicate that his car was approaching, and after striking the little girl the car ran 125 feet before it stopped. There was evidence that it did not stop until it came to the first house beyond Compton avenue, and that that house was 150 feet from the avenue crossing. The weight of this testimony was for the jury, that saw the witnesses and heard them testify, to determine. Two juries have credited the plaintiffs' evidence and it is too well settled in this State to require a citation of authorities, that under such circumstances this court will not interfere with the verdict of the jury, although there may be contradictory evidence.

III. It is conceded by counsel in their brief and argument that the little girl Amelia was of such tender years that she was incapable of contributory negligence and therefore no such defense as that is interposed in this case, but it is insisted that it was an inevitable accident, for which the defendant should not be held liable. The motorman testified that when the little girl made the start from the sidewalk to cross the tracks, his car was fifty feet away from her, and his car was moving at a rate of only eight to ten miles an hour, and it was impossible for him to stop his car in less than 60 feet. On the other hand, Harvey C. Montgomery testified that he had had experience as a motorman in operating a street car for the Suburban Railroad, and was familiar with the size and construction of the defendant's street cars on Arsenal street, and that one of those cars running at the rate of 10 or 12 miles an hour on a grade descending from three to three and a half feet, for a distance of three blocks, on a dry track, on a clear day,

could reasonably be stopped with the brakes within 60 feet, but that in an emergency by using the reverse power such car as described, in the same conditions, could be stopped in forty feet, and such a car going only 8 miles an hour, in the same conditions, could be stopped by using the reverse power in 25 feet, and that he had often made stops of that sort when running at only 8 miles an hour. If Montgomery's testimony was true, and it was for the jury to say whether or not they believed him, it is plain that if the motorman in charge of defendant's car which struck the little girl had been keeping a vigilant lookout, he could have seen the child starting directly in front of his car 50 feet away, and if he had applied the power at his command as directed by the ordinance, he could have averted the injury to the little girl after he saw the danger she was in.

IV. Defendant complains of the refusal to give the 14th instruction asked by the defendant. It is obvious that there was no error in the refusal of this instruction for the reason that the court limited the plaintiffs' right to recovery to the two specifications of negligence in the petition, which charged that the servants in charge of the said car failed to sound the bell or give other warning of the approach thereof, and failed to keep a proper lookout for persons crossing Arsenal street at Compton avenue on the occasion of the injury, and only held the defendant liable for failure to observe ordinary care, and then gave the 5th instruction in words as follows: "If you believe and find from the evidence that the said Amelia Koenig was at the north sidewalk of Arsenal street when defendant's car was crossing Compton avenue, and she then suddenly started from her position at the sidewalk to cross Arsenal street and without regard to her own safety, or without looking for or seeing the car, ran into the same and that such conduct on her part was the sole cause of her injury and death without any negligence or want of ordinary care on the part

of the motorman in charge of the car causing or contributing to such injury and death, then you should find for the defendant.'' And in the 7th instruction directed the jury: ''If you believe and find from the evidence that the injury and death of the said Amelia Koenig were the result of mere accident or misadventure without the fault or negligence of anyone, then you should find for the defendant.'' The court also defined ''ordinary care'' as has often been approved by this court. This court has often criticised the giving of numerous instructions and has admonished the trial courts that a few plain instructions covering all the issues in a case are all that should be given and it is plain that taking the instructions together they fully cover every proposition raised by the respective parties which were necessary to direct the jury in arriving at their verdict. The cause was tried in accordance with the views expressed by this court on the former appeal, and we find no reversible error in the record. The judgment is affirmed. *Burgess, P. J.,* and *Fox, J.,* concur.