Euel WILLIAMS and Virginia Williams, Respondents,

v.

Claude PYLES and Audra Pyles, Appellants.

No. 49044.

Supreme Court of Missouri,

Division No. 2.

Jan. 14, 1963.

Robert B. Baker, Ellington, for defendants-appellants.

J. Ben Searcy, Eminence, Hogan & Hogan, Robert E. Hogan, West Plains, for respondents.

BARRETT, Commissioner.

Claude and Audra Pyles, residents of St. Louis, owned a tract of land, approximately 130 acres, in Reynolds County. On August 5, 1959, they entered into an "option to purchase" in which, upon certain conditions, they agreed to sell the land to Euel and Virginia Williams, residents of Reynolds County, for the "total purchase price" of $1,200. In October 1959, Euel and Virginia instituted this action in specific performance against the Pyles. Upon a trial of the cause, in circumstances to be noted, the court found the issues in favor of the plaintiffs and decreed specific performance and the Pyles have appealed. They urge that because of failure of proof the plaintiffs' action should have been dismissed and, alternatively, that a new trial should be granted. Their first point is that plaintiffs' evidence "conclusively shows that there was no acceptance of the offer by giving a written notice" to Claude Pyles as provided in the option and therefore it is said there was a failure of proof. As entitling them to a new trial the appellants urge (1) that the court erred in not sustaining objections to the testimony of Euel Williams "relating to the execution of the option contract and relating to the purported acceptance on the ground of incompetency, because of the insanity of an agent (Claude Pyles) for the other parties to the contract" and (2) that the court erred and entered a void judgment in proceeding with the trial after a suggestion of insanity was filed without first appointing a guardian ad litem for Claude. The appeal is disposed of upon consideration of the latter point only and it is unnecessary to directly consider the other problems.

The option contract was entered into August 5, 1959, and this action in specific performance was instituted two months later, on October 13, 1959. On November 13, 1959, the Pyles filed an answer in which they denied that the conditions of the option had been complied with and contested as inequitable in general the plaintiffs' right to specific performance. On May 13, 1961, counsel for the Pyles filed a verified motion for a continuance in which he stated as a ground that Claude Pyles "is now confined in a mental institution." The motion set forth the fact that Claude was the only material witness for the defendants, that his

presence was necessary to a proper defense of the action and the substance of what he would testify to was related. In his affidavit counsel suggested "that if this cause is continued for about six months that, it is reasonably possible, the said Claude Pyles will be recovered sufficiently to appear as a witness." On the same day, in addition to the motion for a continuance, counsel filed a "Suggestion Of Incompetency In The Case Of Claude Pyles," in which it was stated that Claude "is now confined in a mental institution in * * * St. Louis State Hospital * * * and is now, and has been for many months suffering from a severe mental disorder rendering him an incompetent person."

When the cause came on for trial six days later, May 19, 1961, there was a rather lengthy colloquy between the court and counsel with respect to the motion for a continuance and Claude's illness. In the course of the discussion Pyles' counsel stated that he had but recently learned that Claude had been in "an institution or two during the last twenty years," and about two weeks ago had learned of the latest hospitalization. When asked by the court whether he had any information as to when Claude would be able to testify counsel responded, "I have nothing that we could say that he would positively be able to testify. But, he's been in and out of this mental condition, I guess, all of his life. And he's in an institution now and we are applying for guardianship over his property and estate." Counsel stated that as far as he knew Claude had never been formally and legally adjudicated a person of unsound mind, "They are doing that now and I think—I assume in those letters it will be sufficient for this Court, in all purposes, to show that he is now legally incompetent." The court said that it was a question of "what would be gained by a continuance" and, "Of course, it's a question of how lucid he was when this transaction was made." The court then reread and overruled the motion for a continuance.

Pyles' counsel then informed the court that "I would like to have my people arrive before we proceed." He also called attention to the "Suggestion of the Incompetency of the defendant as a party." With the assent of plaintiffs' counsel court recessed until 9:30. When reconvened at 9:40 the court announced that the petition had been read, that "your parties aren't here but they have been notified to be here and are expected" and the cause proceeded to trial. The Pyles did not appear and defense counsel's only witness was a real estate agent who expressed the opinion that the land was of the value of $2,500 to $3,000. In the absence of Claude counsel was unable to present any evidence in defense of the merits of the action and he was of course unable to adduce any evidence to contradict the testimony of Euel Williams.

After the trial had been concluded the court reopened the case and permitted counsel for the Pyles to place in the record a "Judgment And Order Of Hospitalization" in the Probate Court of the City of St. Louis. This document recites that on October 27, 1960, the court considered "the involuntary hospitalization" of Claude Pyles the "proposed patient" and finds that he is "mentally ill and is in need of custody, care and treatment in a mental hospital, and because of such illness lacks sufficient insight or capacity to make responsible decisions with respect to need for hospitalization." Whereupon, after finding that he was unable to pay for his treatment, the probate court "orders that said patient be detained for an indeterminate period." Nevertheless, the circuit court overruled the Pyles' motion to set aside the judgment and their motion for a new trial.

The respondents plaintiff contend that the initial suggestion of incompetency "did not operate, in itself, as proof of defendant's incompetency, but the burden was on defendant to prove mental incompetency." They also contend that the order of hospitalization does not operate as an adjudication of mental incompetency. It is said in these circumstances that there was no proof that the defendant Claude Pyles was incompetent "either at the time he was served

with process, or at the time judgment was rendered" and therefore it is argued that the judgment should not be set aside for lack of appointment of a guardian ad litem.

 The order of hospitalization was a proceeding under the statute for the "involuntary" hospitalization of the mentally ill (V.A.M.S., Sec. 202.807) and, strictly speaking, was "not an adjudication of insanity." Murphy v. Murphy (Mo.), 358 S.W.2d 778, 782. And, as to its effect, the court in the Murphy case said, "The most that could be here said is that there is a presumption that plaintiff continued to have some sort of mental illness after the adjudication in question." It may be added parenthetically that these proceedings for the care and treatment of the mentally ill, in fact the entire chapter (Ch. 202 R.S.1959) relating to "Mental Hygiene and State Hospitals" is indeed an innovation and an entirely new concept and advisedly is gingerly approached by the court, particularly upon this appeal. Furthermore, in connection with the respondents' argument, in some instances at least, as in a cancellation case, the burden is upon the individual plaintiff or his guardian ad litem to prove his asserted lack of mental capacity. Allen v. Kelso (Mo.), 266 S.W.2d 696, 702. And it may be noted and conceded that an insane person may sue in his own name or be sued and that a judgment against him is not void and is not subject to collateral attack. Annotations 34 A.L.R. 221, 140 A.L.R. 1336. It may even be observed, if the exigencies of the situation demand it, that specific performance may be had against an insane person. 81 C.J.S. Specific Performance, § 28, p. 474. But, at the same time, a judgment against an insane person is voidable and subject to direct attack or review on appeal. 29 Am.Jur., Sec. 126, p. 247; annotation 35 L.R.A.(N.S) 1090, 1095; Koenig v. Union Depot Railway Co., 194 Mo. 564, 92 S.W. 497. And if the insane person was not represented by a guardian ad litem the judgment should be set aside. Murphy v. Murphy, 358 S.W.2d, l. c. 781; Graves v. Graves, 255 Mo. 468, 164 S.W. 496. A guardian ad litem is not a mere figurehead (Hemphill by and through Burns v. Hemphill (Mo), 316 S.W.2d 582) and it is sometimes necessary even "in the maintenance of actions brought in their own names by unadjudicated mental incompetents or alleged mental incompetents * * * to appoint a guardian ad litem, next friend, or special guardian to protect the litigant's interests." Annotation 71 A.L.R.2d 1247, 1260.

 But the respondents' arguments and all of these observations are more or less beside the point upon this appeal. There is a vast difference in a case in which an allegedly insane litigant is successful and one in which, as here, he is unsuccessful. Allen v. Kelso, 266 S.W.2d, l. c. 704. This after all is an action for specific performance, an equitable proceeding, and "The remedy is invoked primarily that complete justice may be done between the parties." Hoover v. Wright (Mo.), 202 S.W.2d 83, 86. In the circumstances of this record there was no pressing urgency that specific performance of an ordinary real estate option be immediately decreed, particularly when the only possible witness against the action was involuntarily "detained" for treatment in a mental hospital for an "indeterminate period." Such a "proposed patient" may not be legally insane, but the evidence was available and a guardian ad litem could have investigated the facts and perhaps established whether Claude was legally insane. Schuler v. Schuler, (Mo. App.) 290 S.W.2d 192, l. c. 199–200. It does not appear, either now or when the case was tried, that there was or will be any injustice, irreparable injury, or even a loss in damages to withhold the remedy of specific performance. Claude may not have been adjudged *insane*, nevertheless specific performance is a matter of grace (Cox v. Bryant (Mo.), 347 S.W.2d 861, 863) and there is some obligation in an equitable proceeding to safeguard the rights of one who is mentally ill and in need of enforced custody, care and treatment in a mental hospital. Therefore, reviewing this record

anew and coming to such judgment as to this "court shall seem agreeable to law" (Sup.Ct. Rule 83.13(c) V.A.M.R.), the decree is reversed and the cause remanded to the end that a guardian ad litem may be appointed and every other safeguard employed to prevent a possible injustice in an equitable proceeding (44 C.J.S. Insane Persons § 151, p. 325) to one who is obviously mentally ill if not legally or technically insane. 29 Am.Jur. (Insane Persons), Sec. 128, p. 249; 44 C.J.S. Insane Persons, § 151, p. 325; Hoover v. Wright, supra; Hemphill by and through Burns v. Hemphill, supra; Schuler v. Schuler, supra.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.