ARTHUR J. ARN, ELIZA WAHLENMAIER and ISABELLA E. LIND v. GRACE ARN and ED-WARD F. ARN, JR., Appellants.

Division Two, February 23, 1915.

1. EXPRESS TRUST: Deed from Father to Son: Created by Subsequent Letter: Barred by Delivery. Where Ferdinand, being threatened with lawsuits, without valuable consideration in 1874 conveyed ·by deed unrestricted in its terms land to his minor son Arthur, who in 1888, at Ferdinand's request ·and without consideration, by deed on its face properly acknowl-edged, conveyed it back to Ferdinand, which deed without being recorded was laid away and forgotten for more than twenty years, and upon its being found, upon the advice of counsel a new deed was made by Arthur in 1909 conveying the land to Ferdinand, who shortly thereafter conveyed the land unreserv-edly to his children Arthur, Eliza and Isabella, a letter writ-ten by Arthur in 1906 to his brother Edward in which he stated he had no "individual right" to the land, but held the title for the said Edward and his sisters, did not create an express trust in favor of Edward and the other children, and did not have the effect of defeating the deed of Ferdinand of 1909 which omitted Edward as grantee, if the deed of 1888 was actually delivered, for if delivered the title had already passed out of Arthur when he wrote the letter in 1906; and the evidence is examined, and is *held* to preponderate in favor of the chancel-lor's finding that the deed was actually delivered.

2. EVIDENCE: On Issue Not Pleaded. It is not error to exclude evidence offered to establish a contract creating an interest in land where no such contract was pleaded.

3. GUARDIAN AD LITEM: Written Acceptance. Where the record shows that a guardian *ad litem* was appointed for the minor defendant, and that he appeared for said minor and filed an answer, it will be held, notwithstanding the record fails to show that the guardian *ad litem* filed with the clerk his written consent to act as such guardian, that he did accept such appointment.

4. **GENERAL GUARDIAN:** Judgment Recital. General guardians appointed by the probate courts are authorized and directed by statute to represent their wards in legal proceedings and to prosecute and defend for them in the several courts of this State, and where the minor defendant has a legal guardian it is unnecessary that a guardian *ad litem* be appointed; and where the judgment recites that the minor defendant "appears by his general guardian appointed by the probate court" of the proper county, and that recital is not contradicted by any other portion of the record, it is presumed to be true.

Appeal from Jackson Circuit Court.—*Hon. Joseph A. Guthrie*, Judge.

AFFIRMED.

*Clarence I. Spellman* and *William L. Wood* for appellants; *T. C. Sparks* of counsel.

(1) The court erred in excluding parol evidence to show the circumstances surrounding the parties to this case, and Ferdinand Arn and Edward F. Arn, Sr., deceased, in aid and explanation of the construction of the writings offered in evidence by defendants; and in refusing to admit parol evidence to aid the writings, and to show the purpose and terms of the trust, after its existence had been established by written evidence. Adams v. Canutt, 66 Wash. 428; Reid v. Reid, 12 Rich. Eq. (S. C.) 213; Kingsbury v. Burnside, 58 Ill. 329; Johnson v. Calnan, 19 Colo. 175; Railroad v. Durant, 95 U. S. 579; Nesbitt v. Stevens, 161 Ind. 522. (2) The court erred in excluding parol evidence offered by defendants to show the trust in Arthur Arn to sell the land in controversy and divide the proceeds among the four children of Ferdinand Arn in equal parts. Mulrooney v. Building Assn., 249 Mo. 646; Forest v. Rogers, 128 Mo. App. 9; Watson v. Payne, 143 Mo. App. 726; Logan v. Brown, 20 L. R. A. (N. S.) 298; 39 Cyc. 52. (3) The court erred in excluding the testimony of Flora Sells, W. H. Weaver and other competent witnesses to show a contract between Ferdinand Arn and.

Ed. F. Arn, Sr., wherein Ferdinand Arn agreed to convey an interest in his real estate to Ed if he would abandon his home in Texas and come to Kansas City and make a home for his father. Sutton v. Hayden, 62 Mo. 114; Hiatt v. Williams, 72 Mo. 214; Gupton v. Gupton, 47 Mo. 37; Healey v. Simpson, 113 Mo. 340; Hall v. Harris, 145 Mo. 614; Koch v. Hebel, 32 Mo. App. 103; Sharkey v. McDermott, 91 Mo. 647·; Oliver v. Johnson, 238 Mo. 376; Kirk v. Middlebrook, 201 Mo. 245; Walker v. Bohannon, 243 Mo. 119.    (4) The court erred in proceeding to trial in this case without the proper appointment of a guardian *ad litem* on behalf of the infant defendant, Edward F. Arn, Jr., as required by the statutes covering such cases. R. S. 1909, secs. 1714, 1748, 1749; Reineman v. Larkin, 222 Mo. 156; Kurtz v. Eisenstein, 123 Mo. App. 288.

*Gage, Ladd & Small* for respondents.

(1)  There is not a scintilla of evidence to show that Arthur J. Arn held title to this property for himself and his brother and sisters, as alleged in the answer.  (2)  None of the alleged parol declarations of Arthur are shown to have been made prior to the reconveyance of the property in question to his father, in 1888, and for that reason alone they were properly excluded, or ignored by the court.  (3)  The trust relied on is an express trust and it is hardly necessary to say that under our statute a declaration of such trust must be evidenced by some writing and for that reason the parol declarations were inadmissible.  Hunter v. Briggs, 254 Mo. 63; Goodman v. Crowley, 161 Mo. 657; Hillman v. Allen, 145 Mo. 638; Crawley v. Crafton, 193 Mo. 421; Heil v. Heil, 184 Mo. 665; Mulock v. Mulock, 156 Mo. 431.  (4) The letter of Arthur to his brother, of Aug. 8, 1906, was properly ignored by the court, because, if for no other reason, Arthur then had no interest in this property, but had transferred

it to his father eighteen years before, by his deed of 1888. (5) It is not necessary to determine whether Arthur's letter of Aug. 8, 1906, to his brother, is or is not sufficiently definite and certain to establish a trust, because he did not own this property at the time, and therefore he could not create a trust in the property in favor of anyone; but it may be said, in passing, that such indefinite expressions as are relied on here, from one member of a family to another, fail in that definiteness and certainty required to establish a trust. Authorities, supra, point 3; Steere v. Steere, 5 John. Ch. 12. (6) Besides, the trust pleaded is one for Arthur and his brother and sisters; that is, a one-fourth interest each, and Arthur's letter says he could not convey without the consent of his father and sisters, which, if sufficient to create a trust (which we deny), would exclude the letter as not within the pleadings, under the rule laid down in Walker v. Bohannon, 243 Mo. 137. (7) Besides, the charge in the answer distinctly is that the trust which was declared for the use and benefit of Edward Arn was declared by his father, Ferdinand Arn, when he conveyed the property to Arthur on the 14th day of December, 1874, and the only charge against Arthur is that he recognized this trust on behalf of himself, and his brother and sisters, so alleged by the answer, to have been declared by his father in 1874. It is not pretended in the evidence that Ferdinand Arn, at the time of said conveyance in 1874, executed any writing declaring any such trust, yet such trust could only have been proved by "some writing signed by the party who is or shall be by law enabled to declare such trusts, or by his last will in writing, or else they shall be void." R. S. 1909, sec. 2868; Hunter v. Briggs, 254 Mo. 63.

WILLIAMS, C.—This is a suit to determine the title to lot No. 480, Block 35, in McGee's Addition to Kansas City, Missouri. The three plaintiffs are chil-

dren of Ferdinand Arn. The defendant Grace Arn is the widow, and defendant Edward F. Arn a minor son, of one Edward F. Arn, a deceased son of said Ferdinand Arn.

The petition is in the usual form.

The answer, in substance, contained the following allegations: 1st, Denies that plaintiffs are the owners of the property. 2nd, States that another and prior suit is pending, involving the same subject-matter. 3rd, That Edward F. Arn, deceased, owned an undivided one-fourth interest in said property which now belongs to the defendants, as his son and widow. 4th, That on December 14, 1874, said Ferdinand Arn and wife, the then owners of said real estate, "executed and delivered to the said plaintiff, Arthur J. Arn, a warranty deed whereby they conveyed to the said Arthur J. Arn, for the use and benefit of Arthur J. Arn, Isabella C. Lind, Eliza Wahlenmaier and the said Edward F. Arn, Sr. (now deceased), the legal title" in and to said property. That thereupon said four persons, above named, became the owners as tenants in common in equal shares of said real estate. That said conveyance was a gift, the sole consideration thereof being love and affection which the grantors had for their said children. That said Arthur J. Arn frequently recognized the trust on behalf of his brother and sisters and himself and admitted that he so held title to said real estate for their common use and benefit and could not convey the same without the explicit consent of each. That said Edward F. Arn, Sr., died in 1906 and that said defendants, as widow and son of said Edward F. Arn, Sr., deceased, became the owners of his undivided one-fourth interest in said property. That later, and on September 11, 1909, in furtherance of a conspiracy formed between the plaintiffs and said Ferdinand Arn to deprive defendants of their interest in said property, the said Arthur J. Arn, without the knowledge and consent of defendants, conveyed said prop-

erty, without consideration, back to said Ferdinand
Arn, and that, thereafter, on September 30, 1909, said
Ferdinand reconveyed said property by warranty deed,
for a consideration of one dollar, to the plaintiffs here-
in.   That said last-mentioned deed was obtained from
said Ferdinand Arn by undue influence on the weakened
and enfeebled mind of said Ferdinand Arn.   5th, That
prior to the death of said Edward F. Arn, Sr., said
Arthur J. Arn conveyed said property to Edward F.
Arn, but that the deed was unrecorded and that the
same is now lost.   6th, That in 1901 said Ferdinand
Arn, eighty-three years of age and enfeebled in mind
and body, induced Edward F. Arn, deceased, then liv-
ing in Texas, to abandon his home in Texas and move
to Kansas City, Kansas, so as to look after the prop-
erty interests belonging to the children in the two Kan-
sas Cities, as well as to provide a home for Ferdinand
Arn.   He yielded to this request and moved to Kan-
sas City where he looked after said properties, col-
lected rents, and retained the general management of
said properties until his death in 1906.   That the real
estate in controversy is worth in excess of seventy-
five thousand dollars.   The answer prayed that the
deed of September 11, 1909, from Arthur J. Arn to
Ferdinand Arn and also the deed of September 30,
1909, from said Ferdinand Arn to the three plaintiffs,
be cancelled and set aside; that the real estate in con-
troversy be adjudged and decreed to belong to the three
plaintiffs and to defendant Edward F. Arn, Jr., as heir
of said Edward F. Arn, Sr., deceased, subject to the
dower interest of Grace Arn in Edward F. Arn, Jr.'s,
one-fourth interest; that an accounting be had of rents
collected since the death of said Edward F. Arn, Sr.,
and that the rents so collected be distributed to the
respective owners in proportion to their interest in the
same.   The reply admits the execution of the deeds of
December 14, 1874, September 11, 1909, and September
30, 1909, and further states that said Arthur J. Arn

never "executed any instrument in writing evidencing, in any manner, any such trust as is set up in said an-swer." The other allegations were denied. Trial was had, before the court, which resulted in a decree in favor of the plaintiffs and against the contention of the defendants, and the property was decreed and adjudged to belong to the three plaintiffs. Thereafter defendants duly perfected an appeal to this court.

The evidence upon the part of the plaintiffs tended to establish the following facts:

The following deeds, conveying the property in controversy, were admitted in evidence:

Warranty deed, dated December 14, 1874, executed by Ferdinand Arn and wife to Arthur John Arn.

Deed, dated December 2, 1888, executed by Arthur J. Arn, a single man, to said Ferdinand Arn. This deed was acknowledged December 27, 1888, before a notary public, and delivered to the grantee, but was never recorded.

Deed, dated September 11, 1909, executed by Arthur J. Arn and wife to said Ferdinand Arn. This deed was recorded September 21, 1909.

Deed dated September 30, 1909, executed by said Ferdinand Arn to the three plaintiffs.

Said Ferdinand Arn was present at the trial and testified that he was eighty-eight years of age and had lived in Kansas City, Kansas, for forty years; remembered the occasion of buying this property and later, in 1874, of deeding the property to his son Arthur; that, at the time the deed was made, Arthur was a school boy, under age, away from home, and knew nothing about the deed until his return from college about 1888. That he transferred the property to Arthur in 1874 because he was threatened with some law suits; that when Arthur came home in 1888 he informed him of the deed and requested Arthur to reconvey the property to him. That thereupon, in 1888, they went to Lawyer Garrett's office. The above-mentioned deed of

December 2, 1888, was prepared and executed by Arthur and acknowledged before Mr. Garrett, a notary public. Garrett died a number of years before the trial. That Arthur delivered the deed to him and he was in no hurry to put it on record and finally forgot about having the deed recorded until one summer when he and his wife returned from a trip to California he thought about the deed. That he had kept the deed in a trunk which was unlocked and which was left in his residence when he went to California. That his son, Edward F. Arn, Sr., occupied the house in his absence. Upon his return he looked in the trunk for the deed, but it was gone. This was about eight years before his wife's death which occurred in 1898. That he was the father of the three plaintiffs and of said Edward F. Arn, Sr., deceased, and that they were his only children. That Arthur was the youngest child. Witness stated that he had always retained possession of said property, collected rents, and paid the taxes thereon. That after his son Edward's death the deed made by Arthur to him in 1888 was found "down stairs" where Edward F. Arn, Sr., and wife had lived. That when the deed was found, they sought the advice of a lawyer about having it recorded and their lawyer, Mr. Jenkins, told them that if the old deed was put on record it would have to lay in the recorder's office one year and the lawyer advised that a new deed be made. Following this advice, the new deed, being the one dated September 11, 1909, from Arthur J. Arn to witness, was executed and recorded. The witness further testified that the doctor told him that his heart was "out of fix" and that he might drop off at anytime; the witness wanted his three living children to have the property in question and for that reason executed the deed dated September 30, 1909. That he provided for his grandson, Edward F. Arn, Jr., by willing him a house and lot in Kansas City, Kansas, and that he

had intended to give his grandson another house, but that the defendant Grace Arn had sued him and that he had not given the other property to his grandson. Witness stated that there was never, at any time, an agreement that the property was to be held by the plaintiff Arthur J. Arn for the benefit of his brother and sisters. On cross-examination, the witness stated that he had deeded other property, in Kansas City, Kansas, to his children, at different times, but that none of the property was deeded to them in trust for the others. Witness stated that when his son Edward returned from Texas, he agreed to give Edward ten per cent of all the rents that Edward would collect for him. The arrangements were that Edward was to collect the rents and deposit such money in the bank and then, at the end of the year, he was to divide it up with his sisters and brother; that Edward collected the rents and kept all; that he started his son Edward in the business of making cement blocks; that Edward, at the time of his death, owed the witness three thousand dollars for rents collected. That his son, after coming back from Texas, married the defendant Grace and they lived at his house until Edward's death; he boarding with them for the use of his house. After Edward's death, the widow and child stayed at his home and he boarded with them and paid for his board, and allowed the widow to collect some of his rents, for which he paid her.

U. G. Burris, tenant, for about twenty years, of a part of the property in controversy, testified that Ferdinand Arn rented the property and collected the rents the greater portion of the time; that a part of the time the rents were collected by Edward F. Arn, Sr. That when the tenant wanted any repairs made or anything done about the premises, the son, Arthur J. Arn, said he would have to consult his father about it.

Arthur J. Arn, one of the plaintiffs, testified that he was born in 1861 and was, therefore, thirteen years old in 1874 when the deed was made to him by his father. That he knew nothing about the deed until about 1887, at which time he returned home from Germany where he had been attending college; that he was educated for the ministry and was ordained in 1892, at which time he accepted a pastorate in Wisconsin where he remained for thirteen years, and then accepted a second pastorate in Wisconsin where he remained until 1907, at which time he moved back to Kansas City and since that time has resided there in one of his father's houses. That after he returned from college, and sometime in 1888, his brother Ed. told him that this property stood in the name of the witness and that it could be sold for fifty thousand dollars. Later his father came to him and asked him if he would not deed the property back to him and he said, "Certainly," and that the deed of December, 1888, was thereupon executed and delivered. That in 1906, after the death of his brother Edward, the witness was looking over some papers of his deceased brother's, in the presence of deceased's wife and sister, and in those papers he found the old deed which the witness had executed in 1888; that he laid the deed down for a few minutes and stepped out of the room and upon returning the deed had disappeared. The witness then went upstairs and told his father about the incident and his father told him to make out another deed. Sometime afterwards the witness found the old deed of December, 1888, in a secretary which had been used by his deceased brother. He then took the old deed upstairs and showed it to his father and his father asked him to have it recorded, but Mr. Jenkins, a lawyer, told him that the old deed would have to remain for a year in the recorder's office and that he had better execute a new one. He thereupon executed the deed dated September 11, 1909. On

·cross-examination, the witness testified that it was
never called to his attention that the other children
had any interest in the property or that they would
have to make quit claim deeds to the property; that
he never discussed any division of the property or the
sale of the property, or that certain children be charged
with advancements. The following letter was written
by the witness to his brother Ed.

Eau Claire, Wis.

Aug. 8, 1906.

Dear Brother Ed:

I was glad to have your letter and would have answered
sooner but. have been away from home and busy besides. It
does me good to know that you are so happy in that boy. He's
a buster I know, and will give you all a lot of joy. I am sorry
to know that you are not in better health. I wish you were
able to work. We have so much to do and have strength to do
it. Anna is well but working too hard. Alden has grown
since you saw him. He remembers K. C. as the place where
they called him Taruntzer. He wants to visit there again. I
will gladly sign the deed sent me but should like to have the
written consent of Father, Eliza and Bell while the lot happens
to be in my name I have no individual right to it in any way.
I can make no disposition of any of the property which is in my
name without the consent of all. I think that is right. If I
should deed this lot to you without order of the others why
can I not deed any other piece away which happens to be in
my name? The others I don't think will object giving their con-
sent and then I will sign deed. I am thinking that I may come
down this fall and then we could make the transference at that
time. You need not delay the building. We can make the
transfer any time but it must be done in the right way. You
will see the justice of this position. If I can sign deed on the
individual request of any one, Bell can do the same thing and
then we would get into a muddle. I think we ought to get
together and see what should be done. With best wishes to all
and a hug to the boy, I remain, Yours affectionately,

ARTHUR.

The witness denied that he had ever made any
·deed to his brother Edward conveying the property in-
volved in this suit. After his brother Edward's death,
the witness, in talking to a Mr. Gilday, a lawyer repre-

senting a prospective tenant for the property in question, was told that the defendant Grace Arn claimed that she had a deed to the property. The witness said that he never claimed to own the property while it stood in his name.

The evidence upon the part of the defendants tended to establish the following facts:

Defendant Grace Arn testified that she married Edward F. Arn, December 31, 1901, and from that date until her husband's death in September, 1906, she and her husband lived with Ferdinand Arn in Kansas City, Kansas, and after her husband's death she continued to live at the same place until sometime in 1907. Over plaintiffs' objection, she testified that after her husband's death, some of the children of Ferdinand Arn stated that she and her child would inherit her husband's one-fourth interest in the property. She had never heard Ferdinand Arn say anything to her husband about the ownership of the property, and that Ferdinand Arn never told her why he asked Edward to come home from Texas. She heard plaintiff, Arthur J. Arn, discuss the matter of looking after Edward's "one-fourth interest in the family real estate" for herself and child. That Arthur said he wanted to divide the property up, one-fourth for the witness and her child, and one-fourth for each of the plaintiffs; that Ferdinand Arn was never present at any of these controversies; that prior to Edward's death Mrs. Lind (one of the plaintiffs) often insisted on Edward getting the children together and having the matter settled, stating that she didn't trust Arthur and that Arthur held the property here in controversy, and that Mrs. Lind thought he would keep it. The witness testified that her husband had collected the rents and repaired the properties and that after paying for the repairs on the property there was nothing left out of the rents. The witness stated that after her husband's

funeral, Arthur stated that he was ready to go over the papers in Ed's desk; that she was busy taking care of the baby and told him to "go on in and he went in" and that Mrs. Lind went in with him.   That Arthur took some papers upstairs and threw the rest in the coal scuttle and afterwards burned them; that Arthur stated that he had laid a deed out and had gone upstairs and upon his return the deed was gone and that he asked the witness if she had seen the deed and she said, "No," and his sister said, "No."   That sometime afterwards and in 1907 the following occurred: "He [Arthur] asked me one day, 'Grace, do you remember that deed I asked you about?' and I says, 'Yes,' and he said, 'Do you know anything about that deed I asked you about?' and I says, No, I didn't.   I says, 'What deed was it?' and he says, 'It was a deed to this property over here at Nineteenth and Main, that he had deeded to Ed,' and he says, 'I intended to burn that deed and I guess I did.' "   She stated that she never saw the deed from Arthur to his father in 1888. In 1907 there was a controversy concerning one of the leases on a part of this property.   A brewing company was desiring to get a lease on a part of the property and was represented by its lawyer, Mr. Gilday. Arthur requested the witness to go to Mr. Gilday's office for the purpose of making an affidavit and they went to the lawyer's office.   When they got to the lawyer's office, Arthur said to her: "Grace, if this is ever found out on me, I will be ruined for life."   That after they reached the lawyer's office, Arthur departed and she remained.   That she there signed and swore to an affidavit which had been prepared before her arrival. The affidavit was as follows:

My name is Grace Arn.   I reside at 706 Barnett Avenue, Kansas City, Kansas.   I am the widow of Edward F. Arn who died September 17, 1906.   I have one child, a boy, Edward F. Arn.   I know the property in Kansas City, Missouri, known as the Southwest ½ of Lot 480, in block 35, McGee's Addition to

Kansas City, Jackson county, Missouri, being the Northwest corner of 19th & Main streets in said city. The title to said property, to the best of my knowledge and belief, has been in Arthur J. Arn for the past six years. Previous to that time I know nothing about it. I never knew of any deed being made from Arthur J. Arn conveying said property to my husband Edward F. Arn and if any such deed is in existence, it was never, to my knowledge, delivered to my husband and no consideration was ever paid therefor by him. That said deed, if any such is in existence, was never in my custody or possession and is not now in my custody or possession, nor do I know the whereabouts of such deed, if there is any such deed in existence.

GRACE ARN.

The lawyer told her that this was the affidavit which Arthur wanted her to sign. Witness further stated that Arthur requested her not to tell his sister about it, and that Arthur told her that the reason why he wanted the affidavit was that "he had made a deed to Ed to that property" (the property in controversy). That night, Ferdinand Arn, in talking to witness, said: "Grace, if you got that deed, you give it up," and that she replied that she did not have it. That she had never said anything to Ferdinand Arn about this deed before. On cross-examination, the witness stated that the statements made in the affidavit were true · and that she had never seen any deed of that kind and that she had never heard of it until Arthur spoke of it and wanted the affidavit. That on the occasion when Arthur went upstairs and came down and asked the witness if she had seen the deed, he did not say what deed, but in 1907 he said the deed was one he had made to "Ed."

Edward N. Meier testified that about 1890, he tried to lease the property in controversy for a saloon and applied to Ferdinand Arn and that Ferdinand Arn told him that the boys had charge of it; that he would never make a lease unless he asked the boys. This witness testified that Ferdinand Arn told him that the boys owned the property, but on further examination it was shown that the witness had received this impression

from the statements made by the old man to the effect that he would not lease it without asking the boys and that the boys had charge of it and from the further fact that one of the boys sometimes collected the rent.

George Hughes testified that he rented a portion of the property from Ferdinand Arn; that the father collected the rent part of the time and his son Edward collected it part of the time and that Edward once fixed the roof.

E. B. Masterson was introduced as a witness for defendants. Defendants offered to prove by this witness that in 1906, immediately after the death of Edward F. Arn, Arthur Arn admitted that he did not own for himself the title to the lot in question, but that he held said property for himself, his two sisters and for the estate of his deceased brother, Edward F. Arn, and that defendants should receive the same share as each one of the plaintiffs. This offer was excluded and defendants saved an exception. This witness further testified that at the time that Arthur and defendant Grace Arn were on their way to Lawyer Gilday's office, Arthur told him that there was a missing deed or paper about which they were bothered, and he wanted Grace to make an affidavit that she did not know anything about the deed.

Mrs. Sarah Edwards, mother of the defendant Grace Arn, testified that after Edward Arn's death, Arthur was going to burn some papers in the gas stove and later ''she'' took them in the back yard and burned them there herself. Sometime after that Arthur, in a conversation had with defendant Grace Arn, referred to the incident of a deed having disappeared at the time he looked through Edward's papers, and said that ''they'' were making an abstract of the property and ''we have got as far as that deed,'' and asked Grace if she had the deed, and Grace asked him what deed it was and stated that she did not have anything but the

tax title deed and Arthur said, ''That don't amount to anything.'' Witness did not remember whether he said he made the deed or not. Grace told him that she did not know there was such a deed in existence, and that Arthur said, ''Oh, well, perhaps I burned it. I intended to burn it; and I guess, then, I did.'' That on a later date the old gentleman Arn told Grace that if she had the deed she had better give it up. And that Grace replied: ''Why, Grandpa, I haven't that deed. I never saw it. I didn't know there was such a deed in existence.''

Defendants offered to prove by this witness that ''Arthur Arn had several conversations with the defendant Grace Arn, in the presence of these witnesses, in which Arthur Arn stated that, as soon as a sale could be effected, the property at Nineteenth and Main, and other tracts, which various of the Arn children owned, would be divided, and that Edward Arn's wife and child would receive the one-fourth interest therein, if sold; otherwise, they would receive a vested one-fourth interest in all of said tracts.'' And that at some of these conversations, prior to Edward Arn's death, he advised that a sale be not made but that a larger price could be secured later. This offer was rejected and defendants excepted.

Defendants offered to prove by witness Edward D. Kelley that Ferdinand Arn, between the years 1905 and 1910, told the witness that he did not own the property in controversy, but that it belonged to his four children, and that their consent would have to be obtained to the making of either a contract or a deed. The court excluded this offer and the defendants excepted. In excluding the offer, the court said: ''Now, I may as well shorten this thing. I think it sufficiently appears already, but in order that there may be no doubt about it, it is the view of the court that you cannot establish this trust that you are seeking to establish here, by parol testimony, and that any evidence

in this case of declarations by either Mr. Ferdinand Arn or Arthur Arn, his son, along the lines that you have suggested, or as to which was the owner of this property, and what was the respective interests in it may have been, would be incompetent, and the court would not receive it.''

Defendants offered to prove by witness William L. Wood that in July, 1907, Arthur Arn told him that he was very much worried concerning the title to this property; that some time prior, he, Arthur, had made a warranty deed to his brother Edward wherein he had conveyed to Edward the fee to this property in furtherance of a family arrangement that existed among the Arn children for the holding of their real estate. This was excluded by the court on the theory that the witness was an attorney-at-law and that the communication was made to the witness in such a manner as to bring it within the rule of privileged communications.

W. H. Weaver testified that, at the request of Ferdinand Arn, he wrote a letter to Edward Arn, then in Texas, requesting him to come back to Kansas City. The defendants offered to prove the contents of said letter. The absence of the letter was not accounted for and the offer to prove the contents was excluded.

The deposition of Flora Sells was offered. She testified that Ferdinand Arn was her uncle and that in 1901, at the dictation of Ferdinand Arn, she wrote a letter to Edward Arn, who was then in Texas. That she signed Ferdinand's Arn's name to the letter, at his request. Upon objection by plaintiffs, the letter was excluded. The letter was as follows:

Kansas City, Kas.<br>Feb. 18, 1901.

Dear Edd:

I received you letter of the 8th of January. My health has been very poorly this winter. I am scarcely able to get around and am not able to collect the rents and look after the other business, so I would like for you to come and look

after your interests, that is if you want any interest in the affair. It would be a great help to me if you would come and help me, or if you would come and see what you could do. I want you to have your share so you had better come now and get it and not put it off any longer before it is too late. There is nobody to look after things. I have only seen Bell once since she moved away, and that has been about three years. I have the lower part of the house rented. I live up-stairs keeping batch. There are a great many houses being built and they are going to build more. Business is picking up and the rents are better. If you do not come I have to turn things over to some stranger.

I remain your Father,

F. ARN.

On the back of the letter is the following:

"P. S. You ought to try and see what you can do for grandpa is very feeble if the winter would have been colder it would have gone pretty hard with him.     FLORA."

The defendants offered in evidence a number of deeds executed by Ferdinand Arn and wife conveying property other than that in controversy to different ones of the plaintiffs, and also from the children back to Ferdinand Arn, and also a deed from Ferdinand to his son Edward. These deeds were quitclaim or warranty deeds and none of them contained any declarations of trust.

Testifying in rebuttal, Arthur J. Arn, plaintiff, denied that he had told Grace Arn that he had conveyed the property in controversy to Edward; that when the lease controversy arose, Attorney Gilday told him that Grace Arn and her mother, Mrs. Edwards, claimed to have a deed to the property. Witness stated that he had never known anything about any such deed and that he told defendant and her mother that if there was any such deed it was a "bogus" deed, and that the attorney told him that he wanted his clients protected on these leases and requested that an affidavit be procured from Mrs. Arn to the effect that she had no such deed; that the witness then asked Mrs. Arn if she would make an affidavit; that he was not present

when the affidavit was made, but had accompanied Mrs. Arn to the attorney's office; that the deed mentioned by him in his conversation with Mrs. Arn and his sister on the day after his brother's funeral, was the deed made in 1888 by him to his father, which deed he subsequently found; that on the 2nd of October, 1907, he was taken to a sanitarium at Kansas City, Kansas, where he remained for about three weeks; that this was two or three weeks after the controversy over the lease and the controversy he had with his sister-in-law, the defendant here. That he was taken to the sanitarium because of his mental condition. That he was worried and needed rest.

Mrs. Lind, one of the plaintiffs, testified that the day after her brother's funeral, Arthur was looking through some of Edward's papers and laid some of them aside and later asked the defendant, Grace Arn, if she had taken the papers which he had laid aside, and that Mrs. Arn said she had not; and that Arthur then asked the witness if she knew anything about them, and she replied that she did not. Witness testified that she had never heard of a deed from Arthur to Edward. That Arthur was worried over losing the deed of 1888 (the deed from Arthur to his father), but that this deed was afterwards found. On cross-examination, Mrs. Lind testified that at different times her father had made conveyances to her, but that she would turn it back to him. That, "Whenever Father wanted to, he would sign a deed in my name and one in Arthur's name, but we never held them as our own."

Appellants contend that the court erred in failing to decree that an undivided one-fourth interest in said land was vested in defendant Edward Arn, Jr., subject to the dower interest of his mother, his codefendant.

In support of this contention, appellants insist that they are entitled to said interest in said land either (1) on the theory that an express trust was created in said land in favor of Edward Arn, Sr., deceased, or (2

if the evidence is insufficient to prove the express trust then they are entitled to said interest by virtue of an agreement made between Ferdinand Arn and Edward Arn, Sr., deceased, in 1901, whereby said Ferdinand Arn agreed to give Edward Arn, Sr., an interest in said property if he would return from Texas and care for the property and person of said Ferdinand Arn. These two propositions will be discussed in their order.

I. It will be recalled from the above statement of facts that in December, 1874, Ferdinand Arn, the then owner of said land, by straight warranty deed conveyed the land to Arthur J. Arn; that on December 2, 1888, Arthur J. Arn reconveyed said property back to Ferdinand Arn; that this last deed was delivered to Ferdinand Arn, but for reasons given in the above statement, was never recorded. On September 11, 1909, for reasons set forth in the foregoing statement, Arthur J. Arn executed a second deed conveying the land to said Ferdinand Arn, and later said Ferdinand Arn conveyed the property to the three plaintiffs.

Express Trust: Barred by Delivery of Deed.

Appellants do not contend that an express trust was in any manner evidenced by any of the above-mentioned deeds, but insist that the letter dated August 8, 1906, written by Arthur Arn to Edward Arn, Sr., did supply sufficient written evidence of an express trust to satisfy the Statute of Frauds, and that they should have been permitted to show by parol the surrounding circumstances which they contend when taken together with said letter, would show that an express trust as claimed by appellants was created in said land. Appellants' contention is based upon the assumption that on August 8, 1906, the date of the above-mentioned letter, the title to said land was in Arthur J. Arn, the writer of said letter, and that the deed of December 2, 1888, from Arthur to Ferdinand

Arn, was never in fact executed and delivered. Appellants do not contend that they are entitled to recover on the theory of the existence of an express trust *if* the above deed of December 2, 1888, is a valid one, but take the position that *if* said deed is valid then they are entitled to win on the second theory, to-wit, on the theory of the contract of 1901 above referred to. It therefore becomes at once apparent that a serious question stands at the very threshold of the consideration of the theory as to the creation of an express trust in said lands. If the deed of December 2, 1888, was in fact made and delivered then as admitted by appellants' contention it would become unnecessary to discuss the case on the theory of an express trust, or to determine whether the letter of Arthur J. Arn was a sufficient writing to prove such a trust, or still further to discuss the assignment of error as to the exclusion of certain offered testimony in connection with that theory. Are we able upon an examination of the testimony to say that said deed of December 2, 1888, was never made and delivered as claimed by plaintiffs? This deed was introduced in evidence at the trial and its execution and delivery positively testified to by the grantor and grantee therein. The notary who took the acknowledgment was dead. No effort was made by appellants to show that his signature thereon was not genuine, nor are we able to gather from the evidence any hint or suggestion that the deed (twenty-two years old at the date of the trial) did not have the earmarks of age which its date would infer. The chancellor had the deed before him and in this regard had an advantage which is denied this court. Appellants offered no evidence contradicting this positive evidence upon the part of the respondents, but attempt to draw inferences, casting suspicion upon the validity of said deed, from the fact that the deed was lost and afterwards found in a secretary belonging to Edward Arn, deceased, and that appellants knew

nothing of the existence of the deed until the trial. We are unable to say that said deed was not executed and delivered in 1888 as claimed by respondents, but on the other hand the greater weight of the evidence is in favor of the validity of said deed. Arriving at this view upon the facts, it necessarily follows that said Arthur J. Arn had no title to said land at the time he wrote said letter in 1906, and having no title his declaration in writing could not affect the same, and it therefore becomes unnecessary to determine what effect said lttter and the excluded evidence would have on the case had the title been in the writer when said letter was written, and further as to whether or not such evidence was within the pleadings. Those questions are not here determined, because a discussion of the same is precluded by the fact above found to exist.

II. In their brief appellants state: "If the deed from Arthur Arn to his father was and is valid and had been delivered to the grantee, and if it is held to have conveyed the lot in controversy prior to 1901, the defendants still insist that they are entitled to recover by virtue of Ferdinand Arn's contract and agreement made with Ed Arn in 1901."

**Excluding Evidence: Issue Not Pleaded.**

Concerning the above point, it is contended that "the court erred in excluding certain testimony which tended to prove that in 1901 Ferdinand Arn entered into a contract with said Edward F. Arn whereby Ferdinand Arn agreed to convey an interest in his real estate to Edward if Edward would abandon his home in Texas and come to Kansas City and make a home for his father."

With regard to this contention, it is sufficient to say that no such contract was pleaded by appellants, and therefore the exclusion of such evidence was not error. [Walker v. Bohannan, 243 Mo. 119, l. c. 137; Oliver v. Johnson, 238 Mo. 359, l. c. 373.]

III. One further point remains to be considered. It is contended by appellants that "the court erred in proceeding to trial in this case without the proper appointment of a guardian *ad litem* on behalf of the infant defendant, Edward F. Arn, Jr., as required by the statutes of Missouri covering such cases."

Guardian ad Litem.

The above assignment is very general in its terms and we would perhaps be justified in passing the matter because of the failure to specify some alleged defect in the proceedings. However, we have carefully examined the record and have reached the conclusion that it shows that the court had jurisdiction over the person of said minor and that he is bound by said decree.

From the record it appears that one W. H. Maloney was appointed guardian *ad litem* of said minor and that thereafter said guardian *ad litem* appeared in said cause for said minor and filed answer. It is true that it does not appear from the record that the guardian *ad litem* filed with the clerk of the court his written consent to act as such guardian as contemplated by the statute, yet the record does show that said guardian *ad litem* did accept said appointment. This is sufficiently shown by the record showing that he appeared in said cause and filed answer for such minor and performed generally the duties of such appointment. We think such showing sufficient to satisfy the statutory requirement of written consent upon the part of the guardian *ad litem*. [See, Reineman v. Larkin, 222 Mo. 156, l. c. 170-1; 10 Ency. Pl. & Pr., pp. 662-3-4.]

But in the present case, even if it should be conceded, *arguendo*, that the failure of the guardian *ad litem* to file his written consent with the clerk would deprive the court of jurisdictional authority to render a decree against said minor yet other facts appear from the record, to-wit, from the decree entered in the

cause, that the court had ample jurisdiction over the person of said minor. The decree of the court contains the following recitals:

"Now come the parties by their respective attorneys and the infant defendant Edward Arn having been duly summoned in this cause, appears by Walter H. Maloney, his general guardian duly appointed by the probate court of Jackson county, Missouri, and also duly appointed guardian *ad litem* herein, and this cause having been heretofore submitted to the court and all the evidence and arguments of counsel having been heard and duly considered," etc.

If the minor defendant was in fact represented by his general guardian, little importance could be attached to the claim of irregularities in the appointment of a guardian *ad litem*, this because by statute, section 423, Revised Statutes 1909, general guardians are authorized and directed to represent their wards in legal proceedings and to "prosecute and defend for their wards without further admittance, in the several courts of the State," and when the minor has a general guardian it would appear unnecessary that a guardian *ad litem* be appointed. [Clark v. Crosswhite, 28 Mo. App. 34; Robinson v. Hood, 67 Mo. 660, l. c. 661.] Was the minor defendant represented by his general guardian? The decree of the court so states and this statement in the decree is not contradicted by any other portion of the record in the case nor has any attempt been made, in any manner, to contradict said recital. Under such conditions, the judgment recitals are presumed to be true. [Adams v. Cowles, 95 Mo. 501, l. c. 508-9; State ex rel. v. Broaddus, 216 Mo. 336, l. c. 347.]

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.