ANTHONY FIORELLA, APPELLANT, v. ANTHONETTE FIORELLA, NON COMPOS, APPEARING BY HER GUARDIAN AD LITEM, DAVID W. BARRY, RESPONDENT.—240 S. W. 2d 147.

Kansas City Court of Appeals. Opinion delivered April 2, 1951.

*Harrison Johnston* and *Ira S. Gardner* for appellant.

*Harry H. Terte* and *Julian M. Levitt* for respondent.

DEW, P. J.—The appellant was plaintiff in a suit for divorce and custody of his minor children, filed January 26, 1948. On February 24, 1948, defendant, through her attorney, obtained an order appointing a guardian ad litem for her on the ground of her incompetency. An answer was then filed and on April 14, 1948, upon application of the guardian ad litem for suit money, he was allowed a fee of $100 for his own services and $200 for the services of his attorneys. Thereafter a motion to dismiss the petition was filed and depositions were taken on behalf of the defendant. Plaintiff's original counsel then withdrew and one of the present counsel entered his appearance. On the same day, August 23, 1949, present counsel dismissed the cause without prejudice and an order was accordingly made "per dismissal filed herein". No prior notice of the dismissal was given to the defendant. Thereupon, on August 26, 1949, the guardian ad litem filed motion for final allowance for his services and those of his attorneys. The court, sitting as the Assignment Division, and upon its own motion, thereupon set aside the dismissal and upon hearing of the application, attended by counsel for both parties, allowed the guardian ad litem an additional and final sum of $200 for his own services and $350 for his attorneys' fees. Plaintiff then filed a motion to vacate the order of dismissal and final allowances. The cause was then assigned to Division 2, of which the judge was the same. Evidence was heard on the motion to vacate and same was overruled and plaintiff has appealed from the order setting aside the dismissal, the subsequent allowances and the court's refusal to vacate the same.

Defendant moves for a dismissal of the appeal for the reason that the trial court extended the time to file a transcript beyond six months. Rule 3.26. After the six months had elapsed, the plaintiff applied to this court for an extension of 15 days to file a transcript, which was granted. The transcript was filed within that period and we shall consider that matter settled. It is further complained that

plaintiff's brief does not contain a fair and concise statement of the facts, lacks a sufficiency of page references, and contains much argument and irrelevant matter. Rules 1.08, 1.15. We find no material violation of the rules cited and overrule the motion to dismiss the appeal.

Plaintiff first complains that the court abused its discretion in refusing a continuance of the hearing on the application for final allowances described. At the hearing plaintiff's counsel stated to the court that counsel was ill, was new in the case, needed more time, and had requested of opposing counsel, the postponement of the hearing. He states that he had no notice of the hearing. The record shows no request, formal or otherwise, to the court for a continuance, but only a letter written to defense counsel requesting it. Counsel for plaintiff appeared and participated in a lengthy hearing upon the application for allowances and if he received no formal notice, he waived it. The record does not establish any abuse of the court's discretion in proceeding with the hearing.

Anthonette Fiorella, wife of the plaintiff, had since 1944, been a mental patient in State Hospital No. 3 at Nevada, Missouri. A few months prior to the institution of the present action, plaintiff had filed a suit for divorce against his wife and the same attorneys for defendant as herein checked the facts at that time "as far as possible" and were allowed $200 for their services in that cause, which was dismissed by prior counsel. Thereafter the same counsel for plaintiff as in the former action instituted the present suit on January 26, 1948, charging indignities. Plaintiff was then supporting his five minor children and sending $40 a month for the support of his wife in the asylum.

The guardian ad litem in the present case and one of his attorneys made two trips to Nevada, Missouri, to visit the defendant wife and to examine the hospital records to ascertain the extent of her insanity and date of its inception. This consumed two days. He later examined into the law of the case and he and his attorneys conferred a half dozen times on matters of law involved, examined the records as to the plaintiff's property, consulted members of the family on the facts, and prepared the pleadings for the defense. They reported the plaintiff's financial condition to be that he owned an apartment building in Kansas City, a residence on Benton Boulevard, a half interest in a store building, receiving net rents of about $200 a month, drove a Buick car of late model, and was reported to own property at Lake Lotawana. They testified that records were found of two deeds purportedly bearing Mrs. Fiorella's signature attached since she had been confined. The guardian ad litem estimated his additional services to be worth $150. One of defendant's counsel estimated the additional legal services worth $300. Counsel for plaintiff testified that plaintiff was a grocer by trade, now out of

employment, and had lost the sight of one eye; that his apartment is rented to negroes at rates under the rent control law; that his rent for his one-half interest in the store is $45.00; that he and his family are occupying the residence; that title to the Lake Lotawana property is in his brother's name although he may have put some money into it; that he is supporting his five children of ages 7 to 16; is paying a mortgage on the Buick, which belongs to his brother, and his net income in 1947 was $2200 and in 1948, $2000. Plaintiff was out of the city on the date of the hearing.

In the meantime, as shown by the evidence offered upon plaintiff's motion to vacate the orders complained of, information had been filed in the Probate Court of Jackson County, Missouri, charging that Anthonette Fiorella was of unsound mind, praying for an inquiry as to her insanity and the appointment of a guardian and curator for her. On July 13, 1948, a sanity inquiry was held by the Probate Court and Anthonette Fiorella was found to be of unsound mind and incapable of managing her affairs, whereupon the Probate Court appointed a guardian of her person and a curator of her estate.

Plaintiff contends that there was no written motion claiming additional services nor to set aside the dismissal. The motion of the guardian ad litem in question was in writing; it alleged that the dismissal of the cause was had without notice to him; that costs of depositions had been incurred and not paid for; that he had expended sums of money for the defense of the action for which he had not been reimbursed, and prayed the court to determine the final fees due him for his attorneys and for sums advanced in the action. Such motion, in writing, was sufficient to cover "final fees" to the guardian ad litem for his services and for those of his attorneys.

Plaintiff further asserts that he had no notice that the court was to consider setting aside plaintiff's dismissal of his action. It is true that the motion did not specifically ask that the dismissal be set aside, nor is there proof that a notice in writing was served on the plaintiff or his attorney that such was to be considered by the court, but the motion on its face showed that its purpose was to obtain, after the dismissal of the suit by the plaintiff, final allowances for fees due the guardian ad litem and for his attorneys which, of course, could not be accomplished without setting aside the dismissal, and the motion plainly so implied. Allowance for attorneys' fees and other costs in a divorce action after dismissal cannot be made independently of the divorce proceeding, but must be made in the same case or not at all, and for such purposes a setting aside of the dismissal is necessary and proper. Hamilton v. Salisbury, 133 Mo. App. 718, 722, 114 S. W. 563. Counsel for plaintiff appeared and participated in the hearing of the motion throughout, and thus waived further notice of the matter of setting aside the dismissal.

The authority of the court to set the dismissal aside of its own motion within 30 days after entry is supplied by Section 119 of the Code. It is true that section of the Code is in broad language and has been construed to require reasonable notice to authorize the court, of its own motion, within thirty days after the entry of a judgment, to set the same aside. Hoppe v. St. Louis Public Service Co., 235 S. W. 2d 347. However, the record in the present case shows no such lack of notice nor reasonable opportunity to be heard as appeared in the case cited. The court did not exceed its authority in so dismissing the cause on its own motion.

It is also contended that, under the rules of the Circuit Court of Jackson County, the Assignment Division did not have authority to set aside the dismissal, since the case had not been assigned to a trial division. Under Rule 11, sub-section (d), the judge of the Assignment Division is required to "hear and determine all summary applications, motions and other preliminary matters and proceedings necessary to make up the issues in pending causes". The rule contemplates all matters arising prior to assignment to a trial division for a trial on the merits. The matter of setting aside the dismissal of the present cause, which had never left the general docket in the Assignment Division nor had been assigned to a trial division for trial on the merits, was properly entertained by the judge of the Assignment Division.

Plaintiff next contends that after a guardian ad litem was appointed and while the suit was still pending, the defendant was, without the knowledge of the plaintiff, adjudged insane and a general guardian appointed who thereupon was vested with the exclusive authority to represent the defendant in the suit, and the guardian ad litem had no authority thereafter to render services as such or to claim fees therefor. On the other hand, the defendant asserts that inasmuch as at the time of the institution of this divorce action there was no general guardian, it was proper, upon the suggestion of the defendant's mental incompetency, for the court to appoint a guardian ad litem for her, and that even though the general guardian was subsequently appointed by the Probate Court, so long as such general guardian had not been substituted for the guardian ad litem, it was the latter's duty to continue as such representative, and until such substitution was had he had authority to render services as such and to claim allowance therefor. Defendant's counsel, however, have supplied us with no authorities to that effect, and we have made our own research on the question.

Plaintiff does not dispute the legality of the appointment of the guardian ad litem. There is evidence that some of the services for which claim is made were rendered before and after the adjudication of the defendant's insanity and the appointment of her general guardian. Under Section 470, R. S. Mo., 1939, it "shall be the duty

of every such guardian to prosecute and defend all actions instituted in behalf of or against his ward". Whether the plaintiff had knowledge of the appointment of the general guardian or whether such appointment was brought to the attention of the court below, as to which the evidence indicates to the contrary, the fact remains that the general guardian never appeared to defend the action and no steps were ever taken to substitute him for the guardian ad litem, without whom the defendant would have been wholly unrepresented in the cause. The situation is unlike that of a revivor of a case wherein a party dies pending an action. Judson v. Walker, 155 Mo. 166, 55 S. W. 1083. In such case the cause must be revived in the name of the administrator or executor. The present action, after the appointment of the guardian ad litem and appointment of a general guardian, still remained an action against the incompetent defendant. A judgment for plaintiff in the cause would have been a judgment against defendant and not against her representative. Redmond v. Railroad, 225 Mo. 721, 728, 126 S. W. 159.

It is the policy of the courts and the law to protect the interests of litigants laboring under the incapacity of infancy or unsound mind. "The courts are always ready to protect the persons and property of infants and persons of unsound mind". Callahan v. New York Central & H. R. R. Co., 90 N. Y. S. 657, 658. 44 C. J. S. p. 290, Sec. 133. "In any event, it is the duty of the court at all stages of the trial to see that the interests of the incompetent are fully protected and preserved". 28 Am. Jr. p. 742, Sec. 109. The exact situation here presented appears to be one of first impression in this state. Cases of foreign states based on local statutes, which vary materially, have no application. Hicks v. Hicks, 79 Wis. 465, 48 N. W. 495; In re Slade, 43 N. Y. S. 2d 281. Cases in this state wherein no guardian ad litem had been appointed, or wherein, at the time of the institution of the suit against the insane person or when the insanity is made known to the court, a general guardian was or had been appointed, are not applicable. Arn v. Arn, 264 Mo. 19, 173 S. W. 1062; Redmond v. Railroad, 225 Mo. 721, 126 S. W. 159; Koenig v. Railroad, 194 Mo. 564, 92 S. W. 497. The question here is, after the appointment of a guardian ad litem for the defendant, does the later adjudication of her insanity and appointment of a general guardian by the Probate Court, without formal substitution by the Circuit Court, automatically terminate the capacity and authority of the existing guardian ad litem and vest the same exclusively in the general guardian? That such is not true when a subsequent general guardian fails to serve or to qualify was indicated in Graves v. Graves, 255 Mo. 468, 481, 164 S. W. 496, and in other authorities. In State v. District Court, 38 Mont. 166, 99 P. 291, it was held that when the general guardian failed or refused to appear to defend his ward, it was the duty of the

court to appoint a guardian ad litem to protect the interests of the ward. "If the guardian of an incompetent fails or refuses to appear in behalf of his ward, a guardian ad litem shall be appointed by the court for the incompetent". 28 Am. Jur. p. 736, Sec. 103.

It is stated in 44 C. J. S. at page 311, Sec. 144: "Ordinarily, the authority of the guardian ad litem continues throughout the litigation until removed by the court which appointed him, and no other court has authority to supersede him. In application of this rule, it has been held that his functions are not suspended by the subsequent appointment of a general committee or guardian by another court". In the absence of a substitution such must be the law, if the court is to "protect the interests of the incompetent" at "all stages of the trial", which is the cardinal principle universally adopted by our courts. We hold that, absent any substitution for the guardian ad litem and his consequent removal, he had the continued authority to represent the incompetent and to be compensated for his services and costs.

Lastly, the plaintiff insists that the final allowances were excessive. It might reasonably have been found by the court, under the evidence, that some of the services were a duplication, or that some had been rendered in the Probate Court rather than in this cause, or that there was a surplus of legal talent made available to the defendant, or that the allowances exceeded the estimate of claimants themselves when on the witness stand, but the court heard the testimony, saw the witnesses and considered the services rendered. The amounts allowed are not sufficient to shock the conscience of the reviewing court. Hence we do not feel justified, under the record before us, in substituting our judgment for that of the court below as to the amounts of the allowances made. Judgment affirmed. All concur.